WINDOW ROCK DISTRICT COURT

June 20, 1983

No. WR-CV-300-83

IN THE MATTER OF THE ADOPTION:

OF S.C.M., A Kwakiutl Indian.

Honorable Tom Tso, Judge presiding.


This is an adoption case which seeks to stretch the limits of Navajo jurisdiction to their outermost extent. The Clerk of the District Court has brought the petition for adoption on file to the immediate attention of the court because of its unusual circumstances, and the court exercises its inherent authority to rule upon jurisdiction on its own motion.

## THE FACTS UNDERLYING A RULING ON JURISDICTION

Facts are the foundation of jurisdiction, and the sitution in this adoption matter is that:

The female child was born in December of 1982 in British Columbia, Canada. Her parents are Canadian citizens and residents of British Columbia. The natural mother of the child is a "status" Indian of Canada, that is, a person entitled to be registered or who is registered in the Indian Register of the Department of Indian Affairs and Northern Development of Canada. Sec. 2(1), Indian Act, R.S., c. 149 s.1 (Canada). The child is eligible for registry as a status Indian in Canada. Id., Sec. 11(e). The status of the child's father is not shown by the file.

The prospective adoptive father of the child is a member of the Navajo Tribe, and he resides in Provo, Utah. He is orginally from Toh-la-kai in the New Mexico portion of the Navajo Nation. He is the child's uncle, and his deceased wife was the sister of the natural mother of the child.

The child was given into the care and control of her petitioner uncle when she was released from her British Columbia hospital birthplace.

Sixteen days after the child's birth, her natural parents executed consents for her adoption. They were not witnessed by a notary public or other officer empowered to administer oaths, but those consents were attached to affidavits that they had been freely signed after being explained by a barrister and solicitor (a Canadian attorney). The consents name the petitioner as the prospective adoptive parent, they were executed in British Columbia, and they have "In the Supreme Court of British Columbia" at the top.

One of the documents on file in this case is a letter from the petitioner's Canadain solicitors addressed to the Superintendent of Family and Child Services in Victoria, British Columbia. That letter

gives a history of the child and her parents, along with the petitioner's history, and it asks that the letter be accepted as a report under the British Columbia Adoption Act. The court assumes the "report" would be an investigative report each as that required in our adoption code. 9 NTC Sec. 609(a).

In sum, a Navajo uncle who resides outside the Navajo Nation seeks to adopt a Canadian status Indian child, whose parents reside in British Columbia, on the basis of consents executed in British Columbia and made with the intitial intention of use in an adoption in a British Columbia court.

On the basis of these facts, which are shown in the adoption petition and the exhibits attached to it, the petitioner asks this court to waive an investigation and immediately enter an adoption decree.

## THE JURISDICTION PROBLEM

There are a number of approaches to adoption jurisdiction. One is that since an adoption affects the status of a child, and the status of a person is governed by the law of his domicile, the status of the adopted child may only be changed at the place of domicile. Clark, The Law of Domestic Relations in the United States, p. - 609 (1968). ("Domicile" is discussed below). Some courts take the approach that jurisdiction is an in rem action, giving a court jurisdiction over the child's status at the place of the child's domicile. Id., p. 608. Both of these approaches are difficult because of conflicts in deciding whether the "domicile" is that of the adoptive parents or the natural parents. Some courts say that the child's domicile is what supports jurisdiction, while others say that the adoptive parents' domicile will do so. Id.

The Restatement, Second, on Conflicts of Laws, at Section 142 states:

> "A state has judicial jurisdiction to grant an adoption if (a) it is the state of domicile of either the adopted child or the adoptive parent, and (b) it has personal jurisdiction over the adoptive parent and either the adopted child or the person having legal custody of the child."

Taking the concept of domicile as our first jurisdictional consideration (there are other problems considered later), we then examine whether:

(1) The Navajo Nation is the "domicile" of the petitioner or the child; and

(2) The Navajo Nation has personal juridiction over the petitioner and either the child or the person having legal custody of the child.

### The domicile problem

The law of domicile in the subject of conflicts of law is, to say the least, a very slippery problem. The Court of Appeals of the Navajo Nation made its own determination of the law of domicile as applied to the Navajo in the case of Halona v. MacDonald, 1 Navajo R. 189 (1978). That was a suit to enjoin the expenditure of funds from the Navajo Nation treasury to pay for legal expenses of the former Chairman of the

Navajo Tribal Council, Peter MacDonald. A dispute arose as to the proper venue of the case, and the Court of Appeals ruled upon the Navajo law of domicile to find that venue. The court noted that the chairman actually lived in Window Rock, Navajo Nation (Arizona) but was registered to vote in Teec Nos Pos, in the Shiprock Judicial District. Id. 194-195. The court noted the residence in Window Rock, and said, "But for Navajos, domicile is not as clear or fixed as it might be for non-Indians, if Indian brothers." Id. at 195. The court decided the question of legal domicile on the basis of Navajo customary law, which is applicable in civil actions under 7 NTC Sec. 204(a).

The Court of Appeals ruled that:

> "By custom, Navajo consider themselves to be from the same area their mothers are from. Thus whereever they may be, they return home frequently for religious ceremonies and family functions, as well as to vote. By custom, Navajo are allowed to register and vote in the area were they are from, rather then where they live. Even the Navajo Tribal Code's election law is silent on this point. Perhaps this custom may have to be breached in the future, but for the present, Navajos may be considered to be domiciled where they maintain their traditional and legal ties, regardless of where they actually live." Id.

The Navajo rule of custom domicile is comparable to the law of some nations which assign a national domicile to all individuals born in their territory, even where they become citizens of other nations, or the situaton in Mayer v. Department of Publice Welfare where individuals who were an adoptive parent and child living in Japan were considered domiciled in New Mexico. 402 P.2d 942 (1965). (In that case, an adoption was denied under New Mexico law because its adoption statute required the child to be "living" in New Mexico. Although the petitioner is considered to be domiciled within the New Mexico portion of the Navajo Nation, this court does not apply the law of New Mexico because the Navajo adoption statute has preempted that law. 7 NTC Sec. 204.

Therefore the court finds the petitioner's domicile to be that of the Navajo Nation, and the test of Section 142(a) of the Restatement on Conflicts of Laws is satisfied.

The personal juridiction problem.

The test of section 142(b) is not reached as easily. This court has personal jurisdiction over the adoptive parent because he has submitted himself to the jurisdiction of this court, he is a member of the Navajo Tribe and he has a legal domicile within the Navajo Nation. This court does not have personal juridiction over the adoptive child because the child has neither domicile nor residence within the Navajo Nation. The general rule is that the domicile of the child in a situation where the child is born out of wedlock is that of the mother. Matter of Appeal in Pima County, 635 P.2d 187, 191 (Arizona App. 1981). Therefore the domicile of the child is in British Columbia. We do not know what

the domicile of the person having legal custody of the child is, because this court does not know the law of British Columbia which is applicable to this case. The custody rights of the petitioner are fixed by the law of British Columbia, since that is the place of the child's and her parents' residence. It may be that the physical surrender of the child into the physical custody of the petitioner, coupled with the execution of adoption consents in his favor, are a transfer of legal custody to him but the court does not know this, and that point of law is one of foreign law which has not been proven.

Therefore it would appear that this court could exercise jurisdiction over this adoption if it had personal jurisdiction over the child or the person having legal custody of the child. In the absence of proof of the contrary, the child's mother would be the legal custodian of the child.

### The statutory problems here.

Aside from the tricky domicile questions which have been presented to the court, there is the matter of this court's statutory jurisdiction. Adoption is not a common law child; It is a child of legislation. Our adoption code, Chapter 7 of Title 9 of the Navajo Tribal Code, is silent on the question of this court's jurisdiction. However, our general jurisdiction statute, 7 NTC Sec. 253, does contain a provision regarding adoption jurisdiction:

> "(3) Domestic Relations. All cases involving the domestic relations of Indians, such as divorce and adoption matters. Residence requirements in such cases shall remain in heretofore provided in regard to the Navajo Tribal Courts of Indian Offenses."

This court has subject matter jurisdiction over the adoption since the petitioner is a Navajo Indian and the child is Indian. (This court accepts the Indian-ness of the child not only because she is entitled to registration as a Canadian status Indian, but because the Indian nations of Canada have the natural right to determine on their own who are Indians).

7 NTC Sec. 253(3) was adopted on October 16, 1958 under our Tribal Council Resolution CO-69-58. The Navajo Tribal Court of Indian Offenses, which was a court controlled by the Bureau of Indian Affairs prior to April 1, 1959, used the provisions of 25 C.F.R. Sec. 11.22, which were promulgated on December 24, 1957. 22 FR 10515. The pertinent part of that regulation provided:

> "The Court of Indian Offenses shall have jurisdiction over all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction, and of all other suits between members and nonmembers which are brought before the courts by stipulation of both parties."

There is no provision for residence in an adoption case under Part II of 25 C.F.R., with the exception of custom adoptions between members,

which had to take place "upon the reservation." 25 C.F.R. Sec. 11.29. Therefore there is no residence requirement under our law.

While the current status of our jurisdictional law does not require the consent of a nonmember of suit where the nonmember is a resident of the Navajo Nation or the action arose within the Navajo Natin (Resolution CF-19-80), because the child and her natural parents are not residents of the Navajo Nation and this case does not arise within the Navajo Nation (being held to not so arise because of the requirements outlined in the Restatement section discussed above), then, for all practical purposes, this court will need the consent of the nonmember parents by means of their submission to the jurisdiction of the court, since that is the only means personal jurisdiction maybe obtained over them.

Therefore, this court does have subject matter jurisdiction over this case and it does have jurisdiction insofar as the domicile of the adoptive parent is concerned. It does not have jurisdiction insofar as personal jurisdiction over the child or her legal custodian is concerned. At least that has not been demonstrated to the court at this point.

## THE PROBLEM OF CONSENT

This court should apply the standard of its adoption code to the consents which have been executed by the natural parents. Those consents are valid if they were signed in the presence of the judge of clerk of court or acknowledged before a notary public. 9 NTC Sec. 603(b). They were not signed before the judge of this judicial district or its clerk, and they were signed before a Commissioner for taking Affidavits in British Columbia. That satisfies the statute.

There is the problem, however, that the copies of the consents on file are photocopies, and the court will require further proof of their authenticity, in accordance with the Navajo Rules of Evidence. Rule 30 provides that "All evidence must be authenticated or identified to the satisfaction of the judge that the evidence is what it is claimed to be before it may be admitted." Such proof of authenticity will be required here.

## THE ABSTENTION PROBLEM

While the petitioner may provide further information or the natural parents of the child may submit to the jurisdiction of this court, one further question is whether this court should exercise jurisdiction. First of all there is the problem that if this court happens to not have jurisdiction based upon any rational interpretation of adoption jurisdiction theory, then the adoption decree will not be recognized. This was the situation when the Arizona Supreme Court refused to recognized a decree of its own courts. Hughes v. Industrial Commission, 211 P.2d 463 (1949).

There is the more important question of policy. The court notes that the petitioner originally intended to pursue the adoption in the courts of British Columbia, but obviously he has not done so. Is this because of a valid interest which British Columbia has in the child which was used as a ground for denying an adoption? Is it due to the need of the petitioner to return to his home in Utah immediately after receiving

his niece from his sister-in-law? Was it because of restrictive Canadian adoption policies which ignore the wishes of Indian childrens' bands or tribes and the value of placing Indian children with their extended families? The court needs to know these things.

This court notes that Canada is experiencing many of the same difficulties of non-Indian ignorance of Indian ways we have seen, particularly those of placement of a child within the extended Indian family in accordance with custom and the wishes of the child's tribe. See, Tom v. Children's Aid Society, (1982) 1 C.N.L.R. (Canadian Native L. Rep.) 160, 170, 132 D.L.R. (3d) 187, (1982) 2 W.W.R. 212 (Manitoba Prov. Ct., aff'd Man. CA) Re Eliza, (1982) 2 C.N.L.R. 53 (Sask, Prov.). These are the problems which lead to the adoption of the Indian Child Welfare Act in the United States. The Indian Child Welfare Act was also adopted to avoid the abuses of nonsanction private placements of children, and the court does not wish to simply give its blessing to an unsanctioned private placement, although it is made within the child's extended family.

Therefore the court wishes to know the complete history of this case and exactly why an adoption was not pursued in the courts of British Columbia. The court will make its policy decision based upon Navajo policies and it will lean in favor and the extension of jurisdiction should good cause be shown for not pursuing an adoption in British Columbia.

Indian law is the law of those legitimate policies adopted by Indian peoples for the benefit of Indian peoples. The policy applicable in this case is the Navajo common law policy that were children are given up by their natural parents, for good cause or bad, they are usually given up to clan members or relatives. The specific Navajo custom law applicable to this case is that where a man places his saddle outside the hogan of a woman, he pledges to serve her family and clan members. Here a Navajo man placed his saddle before the hogan of a Kwakiutl woman and has pledged to serve her clan and protect his neice. (The court is unaware of the proper metaphor for the Kwakiutl version of a hogan and apologizes for ignorance of that fact). Therefore the policy would appear to be in his favor if these other questions can be answered so the court can be satisfied he is not simply forum-shopping to avoid a proper application of proper policies of British Columbia.

THE INVESTIGATION

The petitioner may not have an investigation waived. 9 NTC Sec. 609(a) requires an investigation in all adoption cases. That statute refers to the Agency Branch of Welfare of the Bureau of Indian Affairs, but since its functions have been assumed by our Division of Social Welfare under the Indian Self-Determination Act, it will be responsible for making the required report.

The court notes that the Indians of Canada have many fine Social Welfare organizations, and the Union of British Columbia Indian Chiefs is noted for its fine services to its people. Certainly it will assist the Division of Social Welfare in this case.

## THE CHILD'S BIRTH RIGHTS

This child is eligible for registration as a status Indian under the Canadian Indian Act, with all the rights and benefits which accrue to Canadian Indians. This child has a Canadian birthright, and since she will not be eiligible for membership in the Navajo Tribe, it is important that her Canadian rights are preserved. This court wants a full report on the child's status and benefits in Canada, with assurance that as an Indian she will not become stateless or without proper Indian status under the laws of Canada or the United States. Therefore the court will require that the petitioner have his Canadian barristers and solicitors make a full report to the court on this point and that Division of Social Welfare investigative report address this point.

## TEMPORARY CUSTODY

The final matter to be taken care of in connection with the adoption petition which has been filed is the temporary custody of the child.

The petitioner filed a proposed adoption decree with his petition, and in addition he filed a proposed order which would grant him the immediate temporary custody of the child pending the final decree or a further order of the court.

This order cannot be granted because the court, at this point, lacks jurisdiction over the child, as has been discussed.

In addition the court cannot grant immediate custody of the child because that matter is not properly before the court.

It is a matter of law which is a elementary that the court cannot and will not grant relief without a proper application for relief. Our law clearly provides that no judgment can be granted in a suit unless the defendant has actually received notice of the suit and an opportunity to appear. 7 NTC Sec. 604. This is normally done by means of a complaint, which outlines the plaintiff's claims, and a summons, which is used to notify the defendant of the suit. Rules 2, 3. Rules of Civil Procedures.

It is not unusual for a party to file suit to enforce a legal claim and to ask for immediate relief, such as a temporary restraining order to temporary custody of a child. This too is done by a formal request that the court act, showing the legal right to immediate relief and the emergency nature of the request. Normally this is done by means of a motion for temporary and immediate relief or a petition for such relief.

In short, law suits are begun with written documents which give adequate notice of the facts and the grounds for relief and procedural relief during the courts of the action is obtained by means of a written application, which is normally the motion.

There was no motion, application of petition for temporary custody. Such as an application would show the facts, the legal basis for temporary child custody and it would give strong and sound reasons for granting that sort of relief. Courts are very reluctant to grant temporary custody of a child unless it is in the child's best interests, and custody cannot be granted on the basis of only the filing of a petition for an adoption and a proposed order granting temporary custody.

Therefore the order will be denied.

## THE SIGNING OF THE PETITION

The court also notes that the petition for adoption is not signed by the petitioner. It is signed by the counsel for the petitioner.

The adoption petition statute, 9 NTC Sec. 606, does not require the prospective adoptive parents to sign the petition, but that section does require that the petition be substantially that of 9 NTC Sec. 607. The form contained in that section ends with the sentence. "The undersigned hereby declare that all facts represented in the above petition are true." This sentence refers to signers in the plural, and it is obviously intended to refer to adoptive parents signing the petition. Therefore, since the clear meaning of the statute regulating the form of the adoption petition is that the petitioner(s) must actually sign it. The petition is ordered to resubmit a petition which he has signed.

## ORDERS

Based upon these concerns the court makes the following orders:

1. - The Division of Social Welfare is required to immediately commence its investigation as required by this order and 9 NTC Sec. 609(a), with the assistance of appropriate British Columbia and Utah social agencies, and to file the same with this court within 75 days of the date of this order;

2. The petitioner shall immediately report the addresses of the natural parents of the child to the Clerk of Court for the purpose of the issuance of a citation containing a consent to the jurisdiction of this court;

3. The petitioner shall request that his Candian barristers and solicitors advise the court on the history of this case to date and the legal rights of the child under Canadian law;

4. The proposed order for temporary custody of the child is denied for the reason stated;

5. The petitioner is order to refile his adoption petition by signing it himself and certifying that the facts stated in the petition are true;

6. A hearing on jurisdiction and the merits of this case, should the court find it has and should exercise jurisdiction, shall be held before the court at Window Rock, Navajo Nation (Arizona) on the 14th day of September, 1983 at the hour of 8:30 a.m.